## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WESTERN ENERGY ALLIANCE,

        Plaintiff,

v.                                Civil Case No. 1:16-CV-00912-WJ-KBM

SALLY JEWELL, in her official
capacity as Secretary of the United States
Department of the Interior, and BUREAU
OF LAND MANAGEMENT,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS COUNTS II AND III

THIS MATTER comes before the Court on Defendants' Motion to Dismiss Counts II and III, filed November 9, 2016 (**Doc. 19**).  Having considered the parties' pleadings and the applicable law, the Court finds that Defendants' Motion is not well-taken.  Therefore, the Motion to Dismiss is **DENIED**.

## BACKGROUND

Plaintiff Western Energy Alliance ("Plaintiff" or "WEA") asserts claims in connection with a new Bureau of Land Management ("BLM") policy reforming oil and gas leasing on public lands, referred to in the pleadings as "Instruction Memorandum 2010-117" or "IM 2010-117," or "Leasing Reform Policy."   The Complaint asserts three counts: a Freedom of Information Act ("FOIA") Violation, 5 U.S.C. §552 (Count I); a request for a declaration that BLM's leasing policies and practices violate the Mineral Leasing Act, 30 U.S.C. §226(b)(1)(A) (Count II); and an assertion that BLM's actions in scheduling and administering oil and gas lease sales violates the Mineral Leasing Act (Count III).

The following salient facts are taken from Plaintiff's Complaint.  The Mineral Leasing Act ("MLA") gives BLM broad discretion to decide whether to lease lands for oil and gas development.  *See* 30 U.S.C. § 226(a).  The MLA establishes the framework under which the Secretary of the Interior leases and manages the development of these resources. The Secretary has delegated her statutory responsibilities associated with the administration of the oil and gas leasing program to BLM.  BLM is divided into twelve State Offices that exercise regional jurisdiction.  The BLM State Offices are further divided into Field Offices within the particular State Office's geographic boundaries.

The first phase in developing federal oil and gas land use is planning. Resource management plans are prepared for all federal lands and resources, with each Field Office preparing a plan for the lands and resources within the field office's boundaries.  The resource management plans establish which areas within the Field Office's boundaries are open to oil and gas leasing and which areas are closed. The resource management plans are used to determine whether a specific parcel may be available at an oil and gas lease auction sale and under what conditions.

Parcels in areas identified as open for leasing in a resource management plan may be nominated for leasing. Anyone can nominate land parcels by sending a written expression of interest to the BLM State Office having jurisdiction over the parcels. BLM reviews each nomination to ensure that the parcels are, in fact, available for leasing under the resource management plan and that stipulations specified in the resource management plan are attached before the parcels become available for an oil and gas lease auction sale.

The MLA mandates the frequency with which federal minerals must be made available for leasing. *See* 30 U.S.C. § 226(b).  WEA claims its objective in this lawsuit is to require the

BLM to adhere to its obligations under the MLA to hold lease sales "for each State **where eligible lands are available at least quarterly** and more frequently if the Secretary of the Interior determines such sales are necessary."  30 U.S.C. §226(b) (emphasis added).  The Complaint alleges the Secretary has failed to meet this obligation because there have been occasions where "eligible lands are available" and BLM has still declined to conduct quarterly lease auction sales as required under the MLA.  IM No. 2010-117, or the Leasing Reform Policy itself, incorporates the requirement that "State Offices **will continue to hold lease sales four times per year**, as required by the Mineral Leasing Act, section 2269b)(1) and 43 CFR 3120.1-2(a), when eligible lands are determined by the state office to be available for leasing."  WEA contends BLM "has regularly violated the requirement that available lands within each State be offered for lease on a quarterly basis."  *See* Compl. ¶ 19.

Thus, the central issue in this case is discrete.  WEA seeks a declaration that BLM's practice of canceling or deferring lease auction sales less frequently than quarterly, for reasons other than lack of eligible parcels, is illegal under the MLA.  *See e.g. id.*, ¶¶ 121–123.

Defendants filed a Motion to Dismiss Counts II and III (**Doc. 19**) on November 9, 2016, arguing WEA does not have standing to bring Counts II and III and that WEA brings an impermissible programmatic challenge.  WEA filed a Response in Opposition (**Doc. 25**) on November 30, 2016.  Defendants filed a Reply (**Doc. 30**) on December 19, 2016.

## LEGAL STANDARD

### I.     Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). The case or controversy

3

limitation requires that a plaintiff have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992). A plaintiff bears the burden of establishing the elements of standing. *Defenders of Wildlife*, 504 U.S. at 559–61. In deciding the issue of standing, the Court must accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The question of standing is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. A plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable judicial decision. *Defenders of Wildlife*, 504 U.S. at 559–61.

An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Id*. These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id*. Because injury-in-fact is a constitutional requirement, Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547–48 (2016) (citations omitted) ("Article III standing requires a concrete injury even in the context of a statutory violation"). At this stage in the litigation, a plaintiff must plead the elements of standing in accordance with *Bell Atl. Corp.v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Threadbare recitals of the elements," which are "supported by mere conclusory statements," will no longer suffice at the pleadings stage. *Iqbal*, 559 U.S. at 678. Plaintiff's claims for standing "do not require detailed factual allegations, but must set forth

4

"more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Twombly*, at 555.

## II.   Administrative Procedure Act

Where no applicable statute supplies a private right of action for a petitioner's claim challenging the actions of a federal agency, those claims may only be brought pursuant to the judicial review provisions of the APA. *See* 5 U.S.C. §§ 701–06. Claims brought under the APA must challenge "circumscribed, discrete agency actions." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm."). Further, the agency action complained of must be "final." 5 U.S.C. § 704. Final agency actions are those that "mark[] the consummation of the agency's decision-making process" and "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotations and citations omitted).

## DISCUSSION

At the outset, the Court notes Defendants make seven main arguments, with numerous other sub-arguments, that Plaintiff has no standing. It appears to the Court that Defendants hope the quantity, rather than the quality, of these arguments will persuade the Court to rule in their favor. Defendants argue the Court should dismiss Counts II and III of WEA's Complaint for lack of jurisdiction under Rule 12(b)(1) for two main reasons. First, WEA does not satisfy the requirements of associational standing because it failed to specify which members are injured, and because it has not shown the injured interests are germane to its organizational purpose. Second, WEA cannot show injury-in-fact because it has not specified which parcels of land it wishes to lease, and cannot establish taxpayer harm. Next, any injuries WEA has are speculative

and not redressable by this Court.   Lastly, even if WEA had standing, WEA brings an impermissible programmatic challenge by failing to challenge final BLM actions and instead challenging the manner in which BLM operates lease sales nationwide.   The Court addresses each argument in turn.

## I.     Standing

### a.  Associational Standing

Defendants first argue WEA has not established it has associational standing to sue on behalf of its members.   An association has standing to sue on behalf of its members when those members would have standing to bring the same suit. The Tenth Circuit holds "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (quoting *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977)).   The Court finds WEA has satisfied the test for associational standing.

First, Defendants contend WEA fails to identify which member oil and gas companies are injured by BLM's alleged failure to hold quarterly lease sales.  Defendants point out the Complaint alleges that "[a]lliance members are among the companies that submitted [EOIs] . . ." but WEA has not specified those members.   As a result, WEA failed to meet the minimum requirements of associational standing.   Defendants also take issue with WEA's argument that it cannot specify which members are harmed due to BLM's failure to release documents pursuant to a FOIA request.   BLM argues WEA's contentions are thus speculative because it does not

actually have the necessary information to know whether its members have been injured.  BLM continues that WEA members know the parcels for which they have submitted EOIs. They know whether they have bid on any of those parcels at auction, and whether they have leased those parcels. Yet WEA fails to allege BLM has unreasonably delayed action on any particular EOI. Plaintiff's alleged injuries are thus purely conjectural.

In Response, WEA argues that when BLM cancels or defers a quarterly lease sale despite the existence of available parcels, *all* of WEA's members are harmed because *all* members lose their statutorily protected right to bid on eligible parcels. WEA does not need to identify specific members that have submitted EOIs for oil and gas parcels.  In other words, when BLM fails to adhere to its statutory obligation to offer available parcels, the injury is not limited to specific companies that submitted EOIs but extends to all the association's members.  WEA contends it has asserted detailed and specific allegations that document BLM's alleged failure to meet a non-discretionary statutory obligation; a failure that deprives all the members of their right to bid on eligible lands available for leasing. WEA has identified specific lease sales that have been cancelled or deferred for which BLM has offered grounds other than a lack of eligible lands available for leasing as the basis for the cancellation or deferral. And WEA has pointed to specific schedules for individual State Offices that contemplate less than quarterly lease sales, despite evidence that eligible lands are available for leasing in each of the States under those State Offices' jurisdiction. WEA maintains that these allegations are more than sufficient to confer associational standing.

WEA also notes that the Defendants are attempting to conflate the standing analysis with the merits, and that standing does not depend upon the merits.  For example, it may well be that BLM engaged in all the proper regulatory mechanisms to defer or cancel lease sales and that no

eligible parcels were available.   But those inquiries represent the merits of WEA's case and "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth*, 422 U.S. at 500

The Court agrees with WEA in that even a cursory reading of Plaintiff's Complaint shows WEA alleges harm to all of its members when BLM does not follow the non-discretionary mandate articulated in 30 U.S.C. §226(b)(1)(A).   Moreover, WEA submitted the affidavit of David J. Ewing, President of Ewing Exploration Company ("EEC"), an identifiable member of WEA.   Mr. Ewing explains that the delay in offering nominated parcels forced his company to cut staff, prohibited the company from realizing returns on a $3.5 million investment, and restricted the company's ability to finance a project.   *See generally* Ewing Aff.   Mr. Ewing references ten parcels that EEC nominated and explains that those parcels were not offered for sale until BLM's Wyoming State Office offered them in its August 2016 lease sale, more than seven years after EEC nominated the parcels.   *See id.* ¶ 4.   Mr. Ewing explicitly alleges that BLM could have offered the parcels for sale earlier, but failed to do so and did not provide any formal reason for withholding the parcels.   *See id.* ¶ 5.   Thus, Plaintiff has identified at least one specific member that has allegedly suffered the harm of which Plaintiff complains. The facts presented in Mr. Ewing's affidavit as alleged are immediate and concrete.

Second, Defendants maintain that the interests WEA seeks to protect in this litigation are not germane to Petitioner's interests. This argument may be disposed of as easily as the first. The requirement that "an association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S.

544, 555–56 (1996).  Defendants point to WEA's allegations that it is injured by being unable to plan and thus develop "in the most environmentally sensitive manner;" and that leasing delays "deny federal and state taxpayers the ability to receive royalty payments . . . ." *see* Compl. ¶ 77 (ii), (v).  Defendants contend neither of these interests is germane to WEA's purpose as a trade association representing independent oil and natural gas producers. *See* Compl. ¶ 1.

The Court disagrees, and concludes that the interests WEA seeks to protect are clearly germane to its purpose.  WEA represents over 300 member companies involved in all aspects of environmentally responsible exploration and production of oil and gas on federal lands.  Sgamma Aff. ¶ 3.   WEA members are involved in producing oil and gas on federal lands, and members conduct exploration and production operations on federal lands located within all of the states under BLM's jurisdiction.  *See id.* ¶ 4.  Most importantly, WEA members regularly nominate eligible federal lands for oil and gas leasing by submitting EOIs to BLM State Offices.  *See id.* ¶¶ 5–6.   WEA has alleged BLM's failure to meet a non-discretionary statutory obligation deprives all WEA members of their legal right to bid on eligible lands available for leasing.  Specifically, WEA has identified specific lease sales that were cancelled or postponed for which BLM offered grounds *other than* a lack of available eligible lands.   In addition, WEA has highlighted specific State Office schedules that contemplate fewer than quarterly lease sales, despite evidence that eligible lands are available.   Thus, the Court finds these interests are sufficiently related to the interests WEA seeks to protect, one of which is the right of its members to bid on available lands to further their interests in oil and gas development.

### b.  Injury In Fact

Defendants make two main arguments that WEA has failed to establish injury in fact. First, WEA has not identified any parcels for which its members sought to lease and were not

offered for sale.  Second, WEA cannot assert the interests of state and federal taxpayers.  The Court is not convinced by either argument, and concludes Plaintiff has met its burden to articulate a concrete injury to its members.

First, Defendants maintain WEA has not shown injury in fact because it has not specified which parcels its members sought to lease.  Defendants point to *Summers*, where the Supreme Court found plaintiffs did not have standing when they failed "to allege that *any* particular timber sale or other project claimed to be unlawfully subject to the regulations will impede a specific and concrete plan of [plaintiffs']." *See* 555 U.S. at 495.  BLM contends similarly here, WEA's vague allegations of injury are not sufficient to confer standing.  "Absent the necessary allegations of demonstrable, particularized injury, there can be no confidence of 'a real need to exercise the power of judicial review' . . . ." *Warth v. Seldin*, 422 U.S. 490, 508 (1975) (citations omitted).  By way of example, BLM points to a portion of the Complaint where WEA does not specify the states in which the parcels for which its members submitted EOIs are located.  *See* Compl. ¶ 68.  Since Petitioner alleges that BLM must conduct lease sales quarterly for each state, *see* Compl. ¶ 19, its failure to allege the particular states where the parcels its members wish to lease are located is fatal to its claims relating to the Eastern States Office.

Second, Defendants contend WEA cannot base its standing on the assertion that BLM is denying "federal and state taxpayers the ability to receive royalty payments from the development of federal minerals." *See* Compl. ¶¶ 76–77.  BLM contends federal taxpayer standing fails because a complaint alleging taxpayer standing may only be directed at taxing and spending actions authorized by Article I, Section 8 of the Constitution, not actions by a federal agency acting under authority that Congress delegated to it under the Property Clause, Article

IV, Section 3. Standing cannot generally be based on a plaintiff's mere status as a taxpayer. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011).

WEA responds that it has demonstrated injury in fact because BLM's actions violate the MLA and deprive WEA members of their procedural rights granted by statute. WEA states the relief it seeks is much narrower than Defendants make it out to be, and represents that it alleges only that BLM has not complied with its statutory obligation to conduct quarterly lease sales even though there have been occasions where, applying BLM's standards, eligible lands are available. WEA emphasizes that individual EOIs are *not* the injuries it complains of. Rather, denying the right to bid for eligible lands that are available deprives WEA members of a statutory right under the MLA. *See Spokeo*, 136 S. Ct. at 1549 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.").

In replying, BLM argues WEA has constructed a new legal theory in its Response, which is WEA's assertion that the injury it seeks to redress is that its members are harmed by a deprivation of their statutory right to bid on a quarterly basis. Defendants state Plaintiff has not alleged its members were deprived of a statutory or procedural right to bid on eligible parcels. Moreover, Defendants argue, even if the Court considers WEA's "new legal theory" instead of the relief sought in the Complaint, the Tenth Circuit has repeatedly rejected the notion that loss of an opportunity to bid competitively or to participate in competitive leasing constitutes an injury to confer standing. Defendants rely upon *Wyoming Sawmills Inc. v. U.S. Forest Serv.*, 383 F.3d 1241, 1248 (10th Cir. 2004), where the Tenth Circuit held a timber company did not have standing because the Forest Service had complete discretion on whether to offer the opportunity sought by the timber company.

The Court first notes that WEA is not constructing a "new legal theory." The Court credits WEA's representations about the contours of its Complaint and its interpretation of the relief it seeks. WEA repeatedly and unequivocally states that it is not seeking to lease any particular parcel of land in this case, nor is it seeking to compel BLM to hold more frequent lease sales. It simply wants BLM to abide by its own Leasing Reform Policy and the MLA's statutory directive, 30 U.S.C. §226(b). Moreover, the Court's own reading of the Complaint shows Plaintiff bases its claims on BLM's alleged failure to comply with the MLA. *See* Compl. ¶¶ 114–17; 119–25. The Court first rejects Defendants' argument that Plaintiff does not have standing as a federal taxpayer simply because Plaintiff does not base its allegations, and thus its standing, on its status as a mere taxpayer. Although Defendants do cite the law on taxpayer standing correctly, that is not what this case is about. Simply put, Plaintiff does not have any taxpayer claims, federal or otherwise. The relief Plaintiff seeks does not stem from taxpayer status, but from the alleged loss of the right to participate in oil and gas lease sales.

Moreover, Plaintiff does not need to identify any specific parcels in order to have standing in this case. The injury WEA complains of is narrow. WEA states that all of its members are harmed when BLM cancels lease sales for impermissible reasons because all the members lose their statutory rights to bid.[1] WEA seeks a declaration that BLM's practice of canceling or deferring lease sales less frequently than quarterly, for reasons other than lack of eligible parcels, is illegal under the MLA. As Plaintiff appropriately highlights, the Complaint

---

[1] Indeed, at the hearing on Conservation Groups' Motion to Intervene (*see* Doc. 24), counsel for WEA emphatically maintained that that this case is not an attempt to set aside or modify the Leasing Reform Policy, nor is it a challenge to the Leasing Reform Policy. Plaintiff simply seeks to hold BLM to those provisions which track BLM's obligations under the MLA. Additionally, this case does not challenge BLM's discretion to determine when and how land parcels became "eligible" or BLM's right to withhold parcels, or BLM's discretion to determine when further environmental analysis is necessary for any parcel of land. Thus, while quarterly lease sales of "eligible" lands are mandatory under the MLA, BLM still has complete discretion to decide *which* parcels are offered for lease sale to oil companies.

does not state anywhere that WEA seeks a ruling that oil and gas leases must be sold whenever a company submits an EOI for the leases. Instead, the Complaint asserts BLM must make land "available for lease *if* a parcel is available for oil and gas leasing *and* an expression of interest has been submitted for that parcel." Compl., ¶120 (emphasis added). Thus, the Court concludes Plaintiff was not required to identify specific parcels in order to have standing.[2]

WEA seeks to require BLM to hold lease sales where eligible lands are available; that is, to comply with the provision of the MLA and BLM's own Leasing Reform Policy which is consistent with the statutory mandate. Under both the MLA and BLM's Leasing Reform Policy, quarterly lease sales are mandated *unless* no eligible parcels of land are available. Plaintiff alleges that BLM is delaying or cancelling sales for reasons *other* than non-eligibility of available lands, which Plaintiff asserts is illegal under the statute and contrary to BLM's own Leasing Reform Policy.[3] As WEA argues, a reduction in the amount of federal oil and gas leaseholds and delays in offering "available" leases for impermissible reasons injuries companies whose business depends on developing oil and gas resources on federal lands.

*Wyoming Sawmills*, upon which Defendants rely, is inapposite. There, a timber company sued the Forest Service based on a preservation plan the Service implemented and on the Service's decision not to hold a particular timber sale. *See id.* at 1245. The Forest Service advertised for bidding on a timber sale, but cancelled the sale after consulting with parties to the preservation plan and determining the sale presented certain problems. *See id.* The timber

---

[2] *Summers*, cited by Defendants, is not directly on point. There, the Supreme Court held environmental groups did not have standing based on their assertion that they planned to visit unnamed National Forests in the future. The plaintiffs challenged invalidated regulations claiming future harm to forests based on those regulations. One plaintiff's affidavit merely asserted that he planned to visit unnamed forests in the future, which was not sufficient to confer standing. *See* 555 U.S. at 494–95.

[3] WEA acknowledges that regulations authorize BLM to cancel or defer sales for certain reasons. *See* 43 C.F.R. § 3120.1–3. What WEA does protest is the fact that BLM has allegedly cancelled sales based on administrative whim, convenience, or preference, which are reasons not permitted.

company sued the Forest Service for violation of the Establishment Clause.   The district court

determined the company did not have standing to bring the First Amendment claim.  *See id.* at

1245–46.  Specifically, the district judge found "even if the [preservation plan] were declared

constitutionally invalid, the Forest Service would still be under no obligation to sell any timber."

*Id.* at 1246.  Crucial to the Tenth Circuit's affirmation that the plaintiff did not have standing was

its conclusion that the federal agency had "complete discretion as to whether to offer the

opportunity sought by the plaintiff, and accordingly the courts do not have the power to grant the

only relief that would rectify the alleged injury."  *Id.* at 1249.  Moreover, the court concluded the

timber company failed to show a timber lease would likely become available on the relevant area

if the company succeeded in having the preservation plan set aside.  *See id.*

These facts are completely unlike those before the Court.[4]  Most critically, the injury

Plaintiff complains of is that BLM does *not* have any discretion under 30 U.S.C. §226(b) to hold

quarterly lease sales of available lands.  In *Wyoming Sawmills* there was no guarantee the Forest

Service would hold timber sales because it was in the Service's discretion whether to hold such

sales in the first place, so plaintiff could have no expectation in the timber sale occurring.  Here,

---

[4] Defendants rely upon a number of other cases for their assertion that injury in this case cannot be based on the loss of an opportunity to bid.  *See* Doc. 30, at 9–10.  Although it is accurate the Tenth Circuit in those cases did hold the loss of an opportunity to bid is not sufficient injury, the federal agencies in those cases were not under a non-discretionary, statutory obligation to hold sales.  For example, in *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1451 (10th Cir. 1994), the Tenth Circuit held plaintiffs, operators of a Forest Service concession facility, did not have standing to sue based on the Service's decision not to rebuild the facility after it burned down because they had no entitlement to bid for the Forest Service's concession contract.  The Court found no Article III standing because no court could order the Forest Service to award plaintiffs the concession contract.  Specifically, the relevant statute did not mandate the complete restoration of the facility but merely instructed the Service "to take actions necessary to improve, protect or rehabilitate the damaged property."  *Id.* at 1453.  In contrast, here the injury complained of is the loss of the right to participate in lease sales that Plaintiff expects to be able to participate in because BLM allegedly violated the MLA.  In other words, Plaintiff claims BLM is not following a statutory directive that it has absolutely no discretion to avoid following.  For this reason, these precedents BLM relies upon do not persuade the Court in its favor.  *See also Ash Creek*, 969 F.2d at 872 (affirming district court's finding that plaintiff lacked standing because "decision to offer the lands in question for competitive leasing would be in the sole discretion of the Secretary"); *Wyoming v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992) (loss of coal royalties not a redressable injury because decision to allow competitive coal leasing solely within Secretary's discretion).

in contrast, BLM is under no such discretion and "shall" hold lease sales for each state where eligible parcels are available at least quarterly.  *See* 30 U.S.C. § 226(b)(1)(A).  Clearly, WEA's members have an expectation that they can participate in lease sales when certain conditions of the MLA are satisfied.  When BLM allegedly cancels or defers the sales for reasons other than those permitted by the MLA (other than a lack of available lands), WEA's members lose out on that expectation.  *See Ash Creek Min. Co. v. Lujan*, 969 F.2d 868, 875 (10th Cir. 1992) ("courts generally will find injury in fact if the plaintiff can demonstrate a plausible benefit").  This case is unlike *Wyoming Sawmills*, where the plaintiff had no expectation to *any* agency sale.  When WEA's members expect regular lease sales, and they lose the opportunity to exercise their right to bid at those sales, it is highly conceivable the members are injured.

Plaintiff's position is just this: if "eligible" parcels exist, then BLM must offer these for lease sale on a quarterly basis.  WEA does not ask the Court to hold sales outside the scope of what the statute requires.  This mandate comes from the MLA and identical provisions in the Leasing Reform Policy, not from the Plaintiff.  *See* 30 U.S.C. §226(b)(C) ("Lease sales **shall be held** for each State where eligible lands are available at least quarterly and more frequently if the Secretary of the Interior determines such sales are necessary") (emphasis added).  At the pleading stage, WEA's factual allegations are sufficient to confer standing, regardless of the ultimate disposition on the merits.  *See Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume the general allegations embrace those specific facts that are necessary to support the claim.'")).  Plaintiff has met the first element of its burden to show standing.

### c.  Causation

Defendants next argue WEA cannot show its alleged injuries are traceable to BLM's conduct, thus failing the second prong of the test for standing. *See Defenders of Wildlife*, 504 U.S. at 560–61 (Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."). Defendants continue that speculative inferences are necessary to connect BLM state offices' scheduling of lease sales to WEA members' alleged injuries, which include harms as being unable to drill on federal lands; reductions in operational flexibility; missed deadlines; losses in revenue; and losses of royalties to taxpayers. *See* Compl. ¶ 77. More specifically, BLM argues it is speculative to infer that if BLM were to offer more frequent lease sales, more parcels would be offered for sale, including all of the (unspecified) parcels for which WEA members have submitted EOIs; second, if a lease sale were held, the member companies would obtain their desired parcels; and third, if the member companies obtained their desired leases, those leases would be productive. Defendants argue these links are too weak to maintain the chain of causation because "[s]peculative inferences are necessary to connect [its] injury to the challenged actions." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1157 (10th Cir. 2005) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45–46 (1976)).

First, Plaintiff's alleged harms are not traceable to BLM's lease sale frequency. Regardless of frequency of sales, BLM must determine whether parcels are "available" before offering them for any sale. *See* 30 U.S.C. § 226(b). Simply because a member company has submitted an EOI for a particular tract does not mean the BLM will deem the land "available." Second, Plaintiff's alleged injuries are not traceable to the frequency of competitive lease sales because even if BLM offers for sale a parcel for which a WEA member company has submitted

an EOI, there is no guarantee that the WEA member company would obtain a lease as a result of the sale.  Third, even if a WEA member obtains a lease and completes the permitting process, there is no guarantee that the lease will be profitable and generate revenue.[5]  Not all leases are productive and many produce paying quantities of oil and gas for only a short period of time.

Defendants rely upon *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1451 (10th Cir. 1994), where the Tenth Circuit held the plaintiff did not have standing to compel the Forest Service to rebuild a facility and allow the company to compete for the contract to operate the facility because there was "no guarantee" that the plaintiff "would be awarded the concession contract." Similarly here, BLM contends, WEA's allegations require the Court to speculate that a member company would indeed obtain a lease as a result of the lease sale for which that member has submitted an EOI.

WEA responds that its injury is directly traceable to BLM's conduct because the injury is based on a denial of statutory rights that has already occurred rather than on speculative inferences of possible injury.  WEA clarifies that it does not seek more frequent lease sales, and it does not depend on any guarantee that a particular member would be the winning bidder at auction.  WEA is not claiming that simply because a company has submitted an EOI, the BLM must deem the land "available." Rather, this case is about *only* BLM's cancellation or deferral of mandatory lease sales for reasons the MLA does not permit.  WEA acknowledges that if no eligible lands are available in a given state, BLM is not required to conduct a quarterly lease sale. But WEA argues that a lack of available lands is not the reason BLM has given for cancelling certain lease sales.

---

[5] BLM suggests recent commodity price decreases provide an alternative explanation for WEA's loss of revenue. For example, between July of 2014 and July of 2015, the spot price of West Texas Intermediate Crude fell by more than half, from $103.59 per barrel to $50.90 per barrel.  BLM states the fall in crude oil prices further shows any loss of revenue is not fairly traceable to BLM's actions.

Plaintiff distinguishes *Mount Evans*, arguing there was no statutory authority requiring the Forest Service to rebuild the concession facility that had burned down.  *See* 14 F.3d at 1453. The Forest Service was under no legal obligation to rebuild the facility or to contract with third parties to operate the facility.  Plaintiff contrasts *Mount Evans* with this case, where BLM is subject to a non-discretionary statutory obligation to hold lease sales at least quarterly where eligible lands are available.  *See* 30 U.S.C. § 226(b)(1)(A).  Plaintiff concedes that not every lease can be developed profitably, but argues when BLM illegally reduces the number of leases available in the market, the reduction impacts member companies' ability to maximize other collateral benefits of oil and gas lease ownership. *See* Compl. ¶¶ 76–77.

Plaintiff also responds to Defendants' argument that not all leases are profitable, thus WEA cannot trace its alleged injuries to BLM's conduct.  Plaintiff points out that, as set forth in the Complaint, leases can have worth apart from the value of the minerals that underlie them. For example, a lease can facilitate an operator's ability to design economically efficient projects. *See* Compl. ¶ 77.  Significantly, control of additional acreage may give operators additional leverage when negotiating agreements with other operators and service providers.  *See id.*

In the Reply, BLM again contends the injuries alleged by WEA are economic injuries based on the assumption that its members would be able to lease certain parcels if they were offered for sale.  BLM maintains that WEA has shown no injuries that arise from the loss of the opportunity to bid.

The Court concludes Plaintiff's alleged injury is traceable to BLM.  The Court again dispenses with Defendants' arguments regarding certain parcels, more frequent lease sales, and particular EOIs, which are recurring themes upon which Defendants base their motion.  There are no allegations by Plaintiff that it seeks to have BLM offer any particular parcel. WEA does

not depend on a guarantee that a member would win any specific parcel at auction.  WEA does not argue that BLM should hold more frequent lease sales; what BLM does argue is that BLM should hold the lease sales it is obligated to hold.  Furthermore, the Court is not convinced by Defendants' argument that because not all leases are profitable, Plaintiff has no standing.  The Complaint outlines the benefit of leases apart from the minerals that underlie them. Again, Defendants misconstrue the Complaint and much of what it actually states.  This case is not about the frequency of lease sales nor is it about particular tracts being offered for sale, rather it is about alleged cancellation or postponement of mandatory lease sales for reasons the MLA does not permit.  Plaintiff offers several examples of instances when BLM cancelled lease sales for reasons Plaintiff considered to be based on "administrative whim, convenience, or preference," such as "workload priorities," snowstorms," and "lack of public interest in attending the lease sale."  Compl., ¶¶ 24, 52 & 57.

When BLM cancels lease sales for allegedly illegal reasons, Plaintiff states its member companies are harmed by the loss of opportunity to participate in the lease sale.  From the Complaint, pleadings, and affidavits, the Court understands that oil and gas companies often expend considerable resources in anticipation of and reliance upon BLM holding lease sales per the statutory mandate.  When those sales are cancelled on BLM's alleged "administrative whim," the companies lose out on the expectation that they can participate in the sales and they essentially waste resources in testing those parcels that they expect will be offered for sale.  These alleged injuries are traceable to BLM.

The Court agrees with WEA that Defendants' reliance on *Mount Evans* is somewhat misplaced.  In *Mount Evans*, a concession facility was constructed under a Forest Service permit and was operated by the plaintiffs.  The facility was destroyed by fire, and the Forest Service

elected not to rebuild the facility although the Service had received funds in settlement of the destruction.  The plaintiffs sued the Forest Service under a federal statute, alleging the Service violated the statute by failing to use the settlement funds to rebuild the facility.  *See id.*  The relevant statute, 16 U.S.C. § 579, provided that the Forest Service was not permitted to spend settlement funds from damage to property "on anything it wishes, but must first ensure that *necessary* improvements to the damaged property have been made."  *Id.* at 1450 (emphasis in original).  In concluding the plaintiffs did not have standing to sue to the Forest Service for its decision not to rebuild the facility, the Tenth Circuit explained "even if [plaintiff] was successful in obtaining the relief it seeks and the [facility] was rebuilt, there is no guarantee that [plaintiff] would be awarded the concession contract, and there is no way this court or any other court could order the Forest Service to award [plaintiff] that contract."  *Id.* at 1451.  Critically, the relevant statute did *not* mandate the Forest Service to rebuild the facility; it only required the Service to first ensure whether improvements were "necessary" before spending settlement funds.  *See id.* at 1450.  In other words, the statute did "not mandate the complete restoration" of the facility, and the statute contemplated "that the Forest Service may decide not to completely restore" the facility.  *Id.* at 1453.  Thus, the plaintiff's contention that it lost the opportunity to compete for the concession contract was simply too attenuated.  *See id.* at 1451.

As WEA appropriately notes, in *Mount Evans* the Forest Service was not under a mandatory statutory directive to rebuild the concession facility or to contract with any third party to operate the facility.  Thus, *Mount Evans* is readily distinguishable from the instant lawsuit because here the MLA directs BLM to hold quarterly lease sales when eligible lands are available.  This is in stark contrast with *Mount Evans*, where the Forest Service was under no such statutory obligation.  In *Mount Evans*, the Service was not obligated to rebuild the facility

and in fact had the discretion to determine that no funds should be spent on improving or rebuilding.  *See id.* at 1453.  Thus, *Mount Evans* does not help Defendants.

"The element of traceability requires the plaintiff to show that the defendant is responsible for the injury, rather than some other party not before the court." *S. Utah Wilderness All. v. Office of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1233 (10th Cir. 2010). WEA alleges harm against BLM when BLM cancels or defers lease sales for reasons the MLA does not allow.  Thus, Plaintiff has shown BLM is responsible for the specific harms alleged.

### d.  Redressability

Defendants argue Plaintiff lacks standing because its alleged injuries are not redressable by this Court. To establish standing it must be "likely, as opposed to merely speculative, that the injury will be redressed by the relief requested." *See Tandy*, 380 F.3d at 1283 (quoting *Friends of the Earth v. Laidlaw Envtl. Servs.,Inc.*, 528 U.S. 167, 180–81 (2004)).  Defendants argue this Court cannot order that particular parcels be offered for sale.  And even if it could, holding more frequent lease sales does not guarantee that more total parcels would be offered for sale, or that WEA's members would be able to develop the parcels for which they have submitted EOIs. Moreover, even if this Court did have power to order competitive leasing, holding an auction would not guarantee members the leases they seek.  Therefore, this Court cannot redress WEA's injuries.  Defendants rely again upon *Mount Evans*, 14 F.3d at 1451, where the Tenth Circuit explained even if the plaintiff had the opportunity to compete for a concession contract, there was no way the court could order the Forest Service to award plaintiff the contract in part because the Service was not obligated by statute to rebuild the facility.  Defendants also rely upon *Ash Creek*, 969 F.2d at 872, where the Tenth Circuit held that the loss of the possibility of

obtaining a federal lease was not redressable by a favorable decision because the Secretary of the Interior retained complete discretion whether to offer the lands in question.

In Response, WEA states this Court has the power to enter an order that would redress its injury.  WEA seeks to hold BLM to a federal statute, and the Court has the power to do so. WEA points out it is not asking the Court to compel BLM to lease parcels that have not been designated as available, only to conduct lease sales pursuant to the MLA.  Moreover, WEA is not challenging any aspect of BLM's discretion.  WEA agrees that holding an auction does not guarantee members the leases they seek, but holding an auction in compliance with BLM's non-discretionary, procedural obligation does provide the members the opportunity to bid on available parcels.  Simply put, the Court can fashion relief because the Court can order BLM to hold auctions as it is obligated to do under the MLA.

Defendants reply that this Court cannot order the relief that WEA requests because the Court cannot order BLM to hold sales, again arguing there is no guarantee member companies would be awarded the leases they seek through competitive bidding or even that the parcels they hope to lease will be offered in any particular sale.

The gist of Defendants' argument is that even if BLM offered parcels for which member companies have submitted EOIs, there is no guarantee the companies would submit the winning bids at auction, so WEA's injuries are not redressable.  The Court disagrees.  Once again, Defendants take an overly simplistic and slanted view of the injuries Plaintiff alleges.

Plaintiff does not need to show its members would be the winning bidders at auction, because the injury Plaintiff seeks to have this Court redress is the denial of the opportunity to participate in lease sales that were to occur pursuant to the MLA.  In other words, when WEA member companies expend considerable resources in reliance on the BLM adhering to its

statutory mandate, and the BLM then cancels those sales for allegedly illegal reasons, the member companies are harmed.  The Court can redress this harm by ordering BLM to comply with the MLA.

The cases Defendants rely upon are distinguishable.  In *Mount Evans*, the court had no power to order the Forest Service to award a contract that was solely within the agency's discretion to award.  *See* § I.b, *supra*.  Similarly in *Ash Creek*, the court determined that it could not issue an order requiring the Secretary to subject a parcel to competitive leasing when the Secretary had already exercised his discretion to remove that parcel from the competitive leasing program.  *See* 969 F.2d at 872. And, in *Wyoming Sawmills*, the Tenth Circuit rejected standing for a plaintiff who asserted that, if granted a favorable decision, a timber lease would "likely" become available. *See* 383 F.3d at 1249.  These cases are factually different from the present lawsuit. WEA does not ask this Court to compel BLM to lease parcels that have not been designated as available, only to conduct lease sales of available parcels according to the MLA's directive.  WEA contends it does not rely on such speculation; the parcels WEA seeks to have offered are those that are already eligible and available per the MLA.

Again, the Court defers to Plaintiff's construction of its own Complaint, and notes that Defendants improperly frame their arguments on the premise that WEA seeks an order that *particular* parcels be offered for sale.  Rather, WEA seeks an order that available parcels be offered at least quarterly, consistent with BLM's non-discretionary obligation under the MLA. The Court has the ability to redress the alleged injuries by ordering BLM to comply with the statutory requirements outlined in 30 U.S.C. § 226(b).  Plaintiff does not necessarily ask BLM to hold more frequent lease sales or order that particular parcels be offered; rather, Plaintiff asks BLM to hold lease sales rather than cancelling the sales for impermissible reasons.  Yet again,

Defendants misconstrue the relief that Plaintiff seeks in their attempt to attack standing.  While it may be true that the Court cannot order BLM to hold lease sales, the Court *can* order BLM to comply with the statutory mandate.  Plaintiff simply seeks to hold BLM to those provisions which track BLM's obligations under the MLA.  To meet the last element of the standing requirement, WEA need only show its "injury can *likely* be ameliorated by a favorable decision." *S. Utah Wilderness*, 620 F.3d at 1233 (emphasis added).  WEA has done so.  A favorable decision from this Court would order BLM to comply with its statutory directive and would ensure that BLM conducts lease sales at least quarterly for eligible, available lands.  WEA is not asking this Court to order competitive leasing, so the cases Defendants rely upon in this regard are not helpful.  WEA *is* asking this Court to enforce a non-discretionary statutory requirement, which the Court certainly has the power to do.  Thus, Plaintiff has met the last prong of the standing inquiry.

## II.    **Programmatic Challenge**

The MLA does not contain a provision permitting a private right of action, thus Plaintiff must rely on the APA as the basis for its lawsuit.  *See Wyo. v. United States Dep't of Agric.*, 661 F.3d 1209, 1226 (10th Cir. 2011).  Not only must Plaintiff satisfy the Constitution's standing requirement, but it must show it is "adversely affected or aggrieved ... within the meaning of a relevant statute" by some final agency action.  *Lujan*, 497 U.S. at 883 (quoting 5 U.S.C. § 702). "[A]gency action" is defined in § 551(13) to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act.*" *Norton*, 542 U.S. at 62. Thus, agency action refers to either "the action complained of" or "the action to be compelled."  *Id*. "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  *Id.* at 64.  "The

limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* at 65 (emphasis in original).

Defendants argue the Court should dismiss WEA's Complaint because there is no private right of action for claims seeking wholesale, programmatic relief of BLM's leasing policies. WEA has not contested any discrete, final BLM action or inaction as the APA requires. Defendants point to the Complaint where WEA challenges "[t]he manner in which BLM is presently scheduling and administering oil and gas lease sales." Compl. ¶¶ 117, 124. Defendants contend this shows WEA brings a broad programmatic challenge that is barred by the Supreme Court's opinions in *Lujan*. *See Lujan*, 497 U.S. at 891 ("Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm.").

In *Lujan*, the plaintiffs challenged BLM's "land withdrawal review program." *See id.* at 875. The Supreme Court held the challenged "program" was not a final agency action as required by the APA, 5 U.S.C. § 704. *Id.* at 890. The Supreme Court reasoned: "Under the terms of the APA, respondent must direct its attack against some particular "agency action" that causes it harm . . . [A] regulation is not ordinarily considered the type of agency action "ripe" for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Id.* at 891. Defendants argue that, as in *Lujan*, here Plaintiff seeks sweeping programmatic review of the way in which BLM manages leasing of oil and gas parcels. WEA's claims must be dismissed because it attempts to challenge BLM's policies "wholesale" rather than challenging discrete final agency action. *See id.* WEA failed to challenge a particular sale cancellation involving a specific parcel subject to a member company's EOI, or to allege BLM

impermissibly delayed action on a particular pending EOI.  Thus, Defendants urge, WEA seeks sweeping programmatic review barred by *Lujan*, rather than challenging discrete agency action, so the Complaint should be dismissed.

In the Response, WEA argues requesting that BLM conduct quarterly lease sales of available parcels is not an impermissible programmatic challenge but rather is a request to enforce a discrete, non-discretionary duty.  WEA contends the APA authorizes judicial review of such requests.  Plaintiff contrasts this case with *Lujan*, and states its Complaint does refer to a single BLM order or regulation when it challenges BLM's failure to hold lease sales "for each State where eligible lands are available at least quarterly and more frequently if the Secretary of the Interior determines such sales are necessary." 30 U.S.C. § 226(b).  Though BLM controls the *process* of making lands available for leasing (which WEA does not challenge), "where eligible lands are available," the obligation to offer those lands for lease is mandatory.  WEA again emphasizes its purpose in bringing this suit: it seeks only to enforce the statutory obligation to conduct quarterly lease sales when eligible lands are available; it does not seek to amend the definition of "eligible" or to modify the process by which lands become eligible to be offered at a lease sale.  WEA contends BLM has no discretion under the controlling statute, 30 U.S.C. § 226(b)(1)(A).  WEA distinguishes the relief it seeks from the relief that Defendants argue is being sought.  While Defendants claim WEA wants to challenge BLM's entire program of offering up lands for sale, WEA points out it does not challenge any of BLM's discretionary authority.

Defendants reply that WEA's broad challenge to BLM's leasing program falls outside the scope of APA's waiver of sovereign immunity.  Defendants focus on the portion of the Complaint where WEA challenges "the manner in which BLM is presently scheduling and

administering oil and gas lease sales" and where WEA protests BLM's "currently existing lease sale schedules" that allegedly do not comply with the MLA *See* Compl. ¶ 2–4.

The Court agrees with WEA that requesting BLM conduct quarterly leases of eligible and available parcels is not a programmatic challenge, but a request that this Court enforce a discrete, non-discretionary duty contained in a single statutory provision, unlike the situation in *Lujan*. *See* 30 U.S.C. § 226(b). Yet again, Defendants appear to mischaracterize language in Plaintiff's Complaint, arguing it evinces the programmatic nature of Plaintiff's lawsuit. Defendants highlight where Plaintiff asks the Court to require BLM "immediately abandon all currently existing lease sale schedules that do not comply with the Mineral Leasing Act and to adopt promptly revised lease sale schedules that comply with the terms of the Mineral Leasing Act." *See* Compl. ¶ 3. And, where Plaintiff has requested the Court to "[d]irect BLM to revise or rescind all agency guidance and instructional memoranda, including IM No. 2010-117, that direct implementation of BLM's lease sale program in a manner contrary to law." *Id.*, ¶ 4. The Court credits Plaintiff's interpretation of the relief it seeks. Plaintiff clarified in the Response that these requests do not challenge any aspect of BLM's exercise of its discretionary duties. Rather, the request asks simply that, to the extent BLM's guidance documents are inconsistent with its non-discretionary duty to conduct quarterly lease sales in each State "where eligible lands are available," those documents be corrected for consistency with controlling law.

Defendants insist that WEA's failure to challenge a particular lease sale cancellation involving a specific parcel subject to an EOI reveals the programmatic nature of its challenge. But WEA explains that Defendants' focus on the EOIs as opposed to the lease sales themselves is misplaced. WEA points out that its factual allegations regarding specific lease sales do not depend on the delay of an EOI that a member company might have submitted. The Court

accepts WEA's interpretation of the scope of its own Complaint.  WEA does not seek wholesale correction of any BLM program, and in fact WEA repeatedly emphasizes the discrete nature of this lawsuit:  WEA seeks a declaration that BLM's practice of canceling or deferring lease sales less frequently than quarterly, for reasons other than lack of eligible parcels, is illegal under the MLA.  *See, e.g.*, Compl. ¶¶ 114–115, 121, 123.  Moreover, IM No. 2010-117, or the Leasing Reform Policy itself, incorporates the requirement that "State Offices will continue to hold lease sales four times per year, as required by the Mineral Leasing Act, section 2269b)(1) and 43 CFR 3120.1-2(a), when eligible lands are determined by the state office to be available for leasing."

Agency action can refer not only to the challenged action but also to "the action to be compelled."  *Norton*, 542 U.S. at 62.  It appears to the Court this is exactly the situation here:  WEA seeks to compel BLM to comply with the MLA and the Leasing Reform Policy.  Plaintiff, unlike those in *Defenders of Wildlife*, does not "seek wholesale improvement" of any BLM program.  WEA does not bring this lawsuit on such a broad premise that it is generally aggrieved by the way in which BLM schedules lease sales.  By the Complaint and affidavit of Mr. Ewing, WEA alleges concrete harms unique to oil and gas operators and not simply as a member of the general public.  Thus, the Court finds WEA does not present a programmatic challenge, so the Motion to Dismiss is denied.

### CONCLUSION

In sum, the Court finds and concludes that Plaintiff has met its burden to show standing. Plaintiff has shown injury in fact that is concrete and particularized, that the injury is fairly traceable to Defendants' challenged actions, and that it is likely the injury will be redressed by a favorable decision.  The Court also finds and concludes Plaintiff has not alleged a programmatic

challenge.  Therefore, for the above-stated reasons, Defendants' Motion to Dismiss Counts II and

II (**Doc. 19**) is hereby **DENIED.**


      **SO ORDERED**

                                    _____

                                    UNITED STATES DISTRICT JUDGE