## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| WESTERN ENERGY ALLIANCE, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:16-cv-00912-WJ-KBM |
| ) | |
| v. ) | |
| ) | |
| SALLY JEWELL, in her official capacity as ) | |
| Secretary of the United States Department of ) | |
| the Interior, and BUREAU OF LAND ) | |
| MANAGEMENT, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| THE WILDERNESS SOCIETY, et al., ) | |
| ) | |
| Applicants for Intervention. ) | |
| _____ ) | |

### MOTION TO STAY PROCEEDINGS ON CLAIMS 2 AND 3 PENDING APPEAL OF ORDER DENYING MOTION TO INTERVENE

On January 13, 2017, the Court denied the motion to intervene in this case by Applicants for Intervention The Wilderness Society, et al. (collectively, the Conservation Groups). Mem. Op. and Order (Jan. 13, 2017), Dkt. No. 38 (Interv. Order). On January 17, 2017, the Conservation Groups filed a Notice of Appeal of the Court's Order. Dkt. No. 41. Pursuant to Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a)(1), the Conservation Groups respectfully request that this Court stay proceedings on Claims 2 and 3 of Plaintiff's Complaint, except for the filing of the administrative record, until the Tenth Circuit Court of Appeals resolves the Conservation Groups' intervention appeal.

1

The Conservation Groups meet each of the elements of Rule 62(c):

(1) The Conservation Groups respectfully submit that they are likely to succeed on the merits in the appellate court.

(2) The Conservation Groups will face irreparable harm if district court proceedings on Claims 2-3 go forward without allowing them to participate as parties.

(3) Defendants Sally Jewell, et al. (collectively, BLM) and Plaintiff Western Energy Alliance (WEA) will not suffer any significant harm from a stay because it likely will result in only a modest delay.  BLM is still producing documents in connection with WEA's Freedom of Information Act (FOIA) claim (Claim 1), and BLM also needs additional time to lodge the administrative record before litigation can proceed on Claims 2 and 3.  On the other hand, if the case is not stayed and the Tenth Circuit later rules that the Conservation Groups are entitled to intervene, any prior proceedings on Claims 2-3 may have to be repeated, which would waste the resources of this Court and the parties.

(4) The public interest favors a stay of the district court proceedings, as a stay will conserve judicial and party resources.

Counsel for the Conservation Groups has conferred with the attorneys for the other parties.  BLM does not oppose this motion.  WEA opposes the requested relief.

## BACKGROUND

Under the Mineral Leasing Act (MLA), BLM has broad discretion whether to lease lands for oil and gas development. 30 U.S.C. § 226(a); see Mtn. to Intervene at 4 (Oct. 19, 2016), Dkt. No. 11 (Mot. to Int.).  Before deciding to offer a lease for sale, BLM must conduct an environmental review pursuant to the National Environmental Policy Act (NEPA) detailing the

"environmental impact of the proposed action" and evaluating alternatives to the proposal.  42 U.S.C. § 4332(C); Mot. to Int. at 4-5.

The Conservation Groups have a long history of working to reform BLM's leasing process and seeking to protect public lands from the impacts of oil and gas development.  Their goal of protecting lands requires BLM to fully consider the environmental impacts of oil and gas leases under NEPA before selling the leases, and to offer robust opportunities for public involvement early in the leasing process.  The Conservation Groups have challenged, and continue to challenge, BLM leasing decisions through administrative appeals and litigation to force the agency to do adequate NEPA reviews before offering leases.  Mot. to Int. at 5-6, 9-12; Reply in Support of Mtn. to Intervene (Nov. 16, 2016), Dkt. No. 21 at 11 (Interv. Reply).

On August 11, 2016, WEA filed suit seeking a ruling that BLM must offer oil and gas leases for sale every three months in each state where lands are "eligible and available," and advancing an extremely broad interpretation of that term.  According to WEA's Complaint, the quarterly leasing mandate applies whenever a company expresses interest in leasing lands that are designated as available for leasing under a BLM resource management plan (RMP).  See Complaint ¶¶ 11-14, 18, 22-23 & Prayer for Relief ¶¶ 2-3, Dkt # 1 (Compl.).  WEA's Complaint also requests an Order requiring BLM to "revise or rescind" the agency's 2010 Leasing Reform Policy because that policy imposes a rotating lease sale schedule that allegedly violates the Mineral Leasing Act.  See id. ¶¶ 15-16, 111-125 & Prayer for Relief ¶ 4.

On October 19, 2016, the Conservation Groups moved this Court to allow them to intervene as defendant-intervenors on Claims 2 and 3 of WEA's Complaint.  Mot. to Int. at 1-3. The Conservation Groups did not seek intervention on Claim 1, which alleges FOIA violations by BLM.  Id. at 3.  Following briefing and oral argument, the Court on January 13, 2017 denied

3

the Conservation Groups' motion to intervene.  Interv. Order at 21-22.  On January 17, 2017, the

Conservation Groups appealed that denial to the Court of Appeals.  Dkt. No. 41.  The

Conservation Groups now request that this Court stay proceedings to preserve their ability to

meaningfully participate in this case if the Tenth Circuit appeal is successful.

**ARGUMENT**

A party is entitled to immediately appeal an order denying a motion to intervene.

WildEarth Guardians v. U.S. Forest Serv. (Forest Serv.), 573 F.3d 992, 994 (10th Cir. 2009)

(citing Coal. Of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of the Interior (Coal. of

Ctys.), 100 F.3d 837, 839 (10th Cir. 1996)) ("[A]n order denying intervention is final and subject

to immediate review if it prevents the applicant from becoming a party to an action.").  To

determine whether to grant a stay of proceedings pending appeal, courts look to four factors:

> (1) whether the stay applicant has made a strong showing that [the applicant] is
> likely to succeed on the merits; (2) whether the applicant will be irreparably
> injured absent a stay; (3) whether issuance of the stay will substantially injure the
> other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987); see Homans v. City of Albuquerque, 264 F.3d

1240, 1243 (10th Cir. 2001) (stating the similar showing required in Tenth Circuit for a stay

pending appeal); 10th Cir. R. 8.1 (same).

This Court should stay proceedings in this case to "preserve the status quo pending

appeal so that [the Conservation Groups] may reap the benefit of a potentially meritorious

appeal." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1267 (10th

Cir. 2004) (citation omitted).  Numerous courts have recognized the importance of preserving the

status quo pending the appeal from a denial of intervention.  The Tenth Circuit has previously

granted a motion to stay proceedings pending such an appeal.  See, e.g., Order, WildEarth

Guardians v. U.S. Forest Serv., No. 09-1089 (10th Cir. June 18, 2009) (attached as Ex. A).  This

4

Court also has stayed proceedings pending appeals from the denial of a party's motion to intervene. See Am. Mem. Op. and Order, Forest Guardians v. Bureau of Land Mgt., No. 6:98-cv-1035-MV-WD (D.N.M. Nov. 16, 1999) (attached as Ex. B); Order, N.M. Off-Highway Vehicle All. v. U.S. Forest Serv., Dkt No. 42 in Case No. 1:12-cv-01272-WJ-LFG (D.N.M. July 23, 2013) (text entry). As one court explained:

> It is clear beyond peradventure of any doubt to this Court . . . that any action that this Court allows or takes for the development of the case without the opportunity of the proposed intervenors to participate therein must be inconsistent with the question pending on appeal as to whether they are entitled to such rights. Any other conclusion is nothing more than wishful thinking.

Maine v. Norton, 148 F. Supp. 2d 81, 83 (D. Me. 2001) (emphasis in original); see also Greenidge v. Allstate Ins. Co., No. 02-9796, 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003) (recognizing that if no stay were granted, the proposed intervenors could suffer significant harm because they would be denied any opportunity to be heard and thus be deprived of the chance to influence the outcome of the case).

This Court should grant a stay pending appeal because the Conservation Groups have met each of the four factors supporting such relief.

**A.      The Conservation Groups Are Likely to Succeed on the Merits of Their Intervention Appeal.**

Fed. R. Civ. P. 24(a) provides that a party is entitled to intervene of right when: (1) the application to intervene is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties. Utah Ass'n of Ctys. v. Clinton (UAC), 255 F.3d 1246, 1249 (10th Cir. 2001). The Tenth Circuit "follows 'a somewhat liberal line in allowing intervention.'" Coal. of Ctys., 100 F.3d at 841 (quoting Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d 381, 384

(10th Cir. 1977)).  On appeal the order denying the motion to intervene is reviewed de novo. Forest Serv., 573 F.3d at 995.

In its Order denying intervention, this Court held that the Conservation Groups met the first two Rule 24 requirements: their motion was timely and they had shown a legally-protectable interest in the case.  Interv. Order at 8-9.  The Court, however, ruled that the other two requirements – potential impairment of those interests and inadequacy of representation– were not met.  Id. at 9-20.  The Conservation Groups respectfully submit that they have a strong likelihood of success on appeal from this ruling, and that this is exactly the type of case the Tenth Circuit has repeatedly found to merit intervention under Rule 24(a).  See generally Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111 (10th Cir. 2002) (granting intervention because intervenor's interest was "direct, substantial, and legally cognizable") (quoting Coal. of Ctys., 100 F.3d at 840); UAC, 255 F.3d at 1252 ("Organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens these goals."); Coal. of Ctys., 100 F.3d at 841 (wildlife photographer, amateur biologist, and naturalist had cognizable interest at risk in Endangered Species Act litigation).[1]

> **1.      The Conservation Groups' Legally-Protectable Interests Could Be Impaired
>         By The Outcome Of This Litigation.**

The burden on a proposed intervenor to show that the lawsuit "may, as a practical matter, impair or impede the movant's interest" is "minimal" and requires the movant to show only that impairment "is possible if intervention is denied."  WildEarth Guardians v. Nat'l Park Serv., (Nat'l Park Serv.), 604 F.3d 1192, 1198-99 (10th Cir. 2010) (citations omitted).  The Conservation Groups readily meet this standard.  Mot. to Int. at 13-20.

---

[1] The Conservation Groups incorporate by reference the briefing in support of their Motion to Intervene.  Mot. to Int.; Interv. Reply; Supp. Mem. (Dec. 22, 2016), Dkt. No. 34.

First, WEA's Complaint challenges BLM's Leasing Reform Policy as inconsistent with the MLA, Compl. ¶¶ 13-19, and seeks an order revising or setting it aside. Id. at Prayer for Relief ¶ 4. Such relief would harm the Conservation Groups, which worked for years to achieve these reforms and benefit from the policy's more expansive review and public participation requirements. See Interv. Reply at 3. While WEA argues, and this Court has agreed, that it does not actually challenge the Leasing Reform Policy, the Tenth Circuit looks to the specific relief requested by the face of the complaint to determine whether a proposed intervenor's interests may as a practical matter be impaired. See, e.g., Utahns for Better Transp., 295 F.3d at 1116; Coal. Of Ctys., 100 F.3d at 844. And the face of WEA's Complaint unambiguously seeks an order revising or rescinding the Leasing Reform Policy because of its rotating lease sale directive. Compl. at Prayer for Relief ¶ 4. Regardless of WEA's contrary arguments, this request for relief satisfies the "minimal" burden of showing that WEA's case "may" impair the Conservation Groups' interests. Nat'l Park Serv., 604 F.3d at 1198-99 (internal quotations and citations omitted).

Second, WEA acknowledges that it challenges BLM's authority to postpone lease sales while the agency "revise[s] or update[s] . . . resource management plans" (RMPs) that apply to an area. Resp. in Opp. of Mtn. to Intervene (Nov. 2, 2016), Dkt. No. 17 at 7 (WEA Opp.); Compl. ¶ 44 (describing BLM decision to defer offering lease parcels in Billings, Montana field office until RMP was complete). An RMP is BLM's plan for managing an area, in which the agency determines where to allow mineral development and what terms and stipulations are required on such development to protect natural resources. See 43 U.S.C. § 1712; Compl. ¶¶ 11-12. BLM revises or amends an RMP when it concludes that changes are needed: revisions are made "as the BLM acquires information and knowledge of new circumstances relevant to land

7

and resource values, uses, and environmental concerns."[2]  Thus, WEA would require BLM to proceed with quarterly lease sales even when it has determined that the governing RMP is outdated.  See WEA Opp. at 7.  In effect, WEA wants to require the agency to offer lands for lease where BLM's current management plan does not account for important environmental concerns or new information.  Such an outcome would plainly injure the Conservation Groups.

Third, WEA states that it challenges BLM's authority to postpone lease sales based on "workload priorities," where the "workload" involves performing additional environmental review and tribal consultation.  See WEA Opp. at 7 (WEA citing Compl. ¶ 24); Interv. Reply at 7 (noting that Compl. ¶ 24 objects to postponement of January 2015 lease sale in order to "evaluate public comments regarding potential drainage, tribal consultation, and environmental justice").  WEA's objection to such a postponement directly conflicts with the Conservation Groups' interest in ensuring that BLM conducts an adequate environmental review and fully considers public input.  If BLM had to find other lands to lease elsewhere before it could defer parcels that were scheduled for a particular sale, see Interv. Order at 15 (court mentioning this option), it would create a significant hurdle and disincentive for the agency to defer leasing even when additional review is merited.  It would also put those other lands at risk of leasing on short notice and with insufficient review, which would further harm the Conservation Groups.

Fourth and most broadly, WEA asks this Court for a far-reaching declaratory ruling requiring BLM to hold a lease sale every three months in each state where lands are "eligible and available" for leasing, using a very broad definition of that term.  According to WEA, unless an RMP closes an area to leasing, (a) "any expression of interest" by a company nominating lands

---

[2] See BLM Land Use Planning, Frequently Asked Questions, https://www.blm.gov/wo/st/en/ prog/planning/planning_overview/frequently_asked_questions.print.html (last visited Jan. 20, 2017); see also, 43 C.F.R. §1610.6-7 (revisions made "when monitoring and evaluation findings, new data, new or revised policy, or other relevant changes in circumstances affect the entire resource management plan or major portions of the resource management plan").

makes them "available for leasing," and (b) "all lands available for leasing shall be offered for competitive leasing" on a quarterly basis.  Compl. ¶¶ 11-12, 18-19, 22-23 (emphasis added). This view of the law could transform BLM's broad discretion over oil and gas leasing into a legal mandate to offer new leases whenever proposed by oil and gas companies.[3]  Such an outcome would severely harm the Conservation Groups.

**2.      BLM Does Not Adequately Represent the Conservation Groups' Interests.**

The Supreme Court has held that the inadequate representation requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10 (1972).  Similarly, the Tenth Circuit has held that "the possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden." UAC, 255 F.3d at 1254 (quoting Nat. Res. Defense Council v. U.S. Nuclear Regulatory Comm'n, 578 F.2d 1341, 1346 (10th Cir. 1978)).  This possibility is easily established "when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." UAC, 255 F.3d at 1254.

The inadequacy of representation exists even if the government and the intervenor "occupy the same posture in litigation" at the outset of a case.  Id. at 1255-56 (holding that although an existing party and the government may have the same ultimate objective,

---

[3] In practice, BLM RMPs close only a small fraction of lands – approximately 10 percent – to leasing.  The Wilderness Society, Open for Business (And Not Much Else): How Public Lands Management Favors the Oil and Gas Industry, http://wilderness.org/sites/default/files/TWS%20--%20BLM%20report_0.pdf (last viewed Jan. 19, 2017).  As a result, WEA's legal theory, and the harm it causes to the Conservation Groups, would apply to the large majority of public lands.

representation may be inadequate because the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest).  "Where a government agency may be placed in the position of defending both public and private interests, the burden of showing inadequacy of representation is satisfied."  Nat'l Park Serv., 604 F.3d at 1200; see Forest Serv., 573 F.3d at 996-97 (holding that the Service would not adequately represent the interests of a private company in a NEPA case even though both were defending the same agency decision); In re Sierra Club, 945 F.2d 776, 779-80 (4th Cir. 1991) (holding that for intervention as of right purposes, a government agency is not an "adequate representative" for an environmental organization).

In addition to the disparity between governmental and private interests, the specific facts of this case further demonstrate that BLM does not adequately represent the Conservation Groups.  Here, BLM's multiple-use management mandate, and its application of that mandate in making leasing decisions, differ substantially from the Conservation Groups' interest in protecting public lands.  In balancing multiple uses, BLM often compromises environmental protection in favor of oil and gas development and other land uses.  See, e.g., Mot. to Int. at 20-21; Interv. Reply at 10-11.  Conservation Groups, in fact, continue to litigate against BLM on a regular basis over that agency's leasing decisions, including some of the same lease sales addressed in WEA's Complaint.  Decl. of Jeremy Nichols (Oct. 19, 2016), Dkt. No. 11, Ex. 1 at 46-50; WEA Opp. at 11.  The Tenth Circuit and this Court have repeatedly ruled in similar cases that the federal agency does not adequately represent a proposed intervenor.  See, e.g., Coal. Of Ctys., 100 F.3d at 845-46; N.M. Off-Highway Vehicle All. v. U.S. Forest Serv., 540 Fed. Appx. 877, 881-82 (10th Cir. 2013); Mem. Op. and Order, N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior, No. 1:16-cv-462-WJ-KBM at *8-9 (D.N.M. July 13, 2016) (copy filed at Dkt. No.

21-1).  Moreover, BLM in this case does not even contend that it will adequately represent the Conservation Groups' interests, which further supports intervention.  See UAC, 255 F.3d at 1256 (The government's "silence on any intent to defend the [intervenors'] special interests is deafening.") (quoting Conserv. Law Found. of New England, Inc. v, Musbacher, 966 F.2d 39 (1st Cir. 1992)).

The Conservation Groups also respectfully submit that the new presidential administration creates a very real prospect of a shift in BLM's litigation position.  See Dkt. No. 28, Ex. 1 (WEA website noting prospect that Trump administration may "withdraw or settle" industry lawsuits like this one).  BLM could very well embrace WEA's objectives in this case by settling with WEA, conceding an argument, or failing to appeal a ruling adverse to the Conservation Groups' interests.

The Conservation Groups have a likelihood of success in meeting the minimal burden required by the adequacy of representation prong of Rule 24, as well as the other three requirements for intervention of right.

**B.      The Conservation Groups Risk Irreparable Harm to Their Interests If The District Court Action Is Not Stayed.**

The Conservation Groups also face irreparable injury if the stay is not granted because they will be denied the opportunity to defend their legitimate, legal interests in this matter.  By preserving the status quo, a stay will prevent the irreparable injury that would result from the case proceeding without the involvement of the Conservation Groups.

As the Tenth Circuit Court of Appeals noted in Dominion Video Satellite, a stay of the district court proceedings pending appeal is intended "to preserve the status quo pending appeal so that the appellant may reap the benefit of a potentially meritorious appeal."  356 F.3d at 1267 (citation omitted).  Numerous courts have agreed and granted stays of district court proceedings

11

where intervention was denied by the district court.  See, e.g., Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir. 1983) (noting that the Ninth Circuit had stayed all proceedings while conservation groups pursued an appeal from the district court's denial of their motion to intervene); Abbott Labs. v. Diamedix Corp., No. 94-1345, 1994 WL 782247, at *2 (Fed. Cir. July 26, 1994) (holding that intervenors, the court, and other parties may all be harmed if trial proceeds while denial of intervention is on appeal); Greenidge, 2003 WL 22871905, at *3-4 (staying district court proceedings while appeals court reviews denial of motion to intervene).

If the Court proceeds in the Conservation Groups' absence, they will be denied the ability to participate in pleading, motion practice, procedural and scheduling matters, merits briefing and other advocacy.  See Maine, 148 F. Supp. 2d at 83.  Simply put, once the case goes ahead without the Conservation Groups, it will become increasingly difficult to "unscramble the egg" and provide them an adequate opportunity to participate in the proceedings if their intervention appeal later succeeds.  See Greenidge, 2003 WL 22871905, at *3 (granting stay where proposed intervenor would otherwise lose "the chance to influence the outcome" of the case).

Moreover, if the Conservation Groups are successful on appeal, any district court proceedings that took place without them may need to be re-litigated.  See, e.g., United States v. Carpenter, 526 F.3d 1237, 1242 (9th Cir. 2008).  Such a result would injure all the parties involved.  In Abbott Labs., the Federal Circuit acknowledged that all parties and the court are injured where a proposed intervenor is denied the opportunity to participate in the case while denial of intervention is being considered by a higher court.  Abbott Labs., 1994 WL 782247, at*2.  "From a practical standpoint, if discovery and/or trial proceeds without [proposed intervenor] and a merits panel of this [appeals] court later decides that [proposed intervenor]

should participate, then [proposed intervenor], the <u>other parties, and the trial court will all be harmed</u>." <u>Id.</u> (emphasis added).

**C.      Issuance Of The Stay Will Not Substantially Injure The Other Parties.**

Although the Conservation Groups face irreparable injury without a stay of Claims 2 and 3, neither WEA nor BLM will suffer substantial harm from such a stay.  Currently, WEA and BLM are addressing WEA's first claim for relief (involving FOIA documents) rather than Claims 2 and 3, and that effort is unlikely to be completed until early Spring at the soonest.  Moreover, the Conservation Groups are not asking the Court to defer BLM's lodging of the administrative record.  Compiling and lodging that record will take BLM additional time.  Thus, the requested stay will likely result in only a modest delay in district court proceedings on Claims 2 and 3.[4]  This pales in comparison to the waste of judicial and party resources, and harm to the Conservation Groups, that could result if proceedings move forward during the Conservation Groups' appeal.

The balance of harms thus strongly favors granting the Conservation Groups' motion to stay the proceedings pending the outcome of their appeal.

**D.      Issuance Of The Stay Will Not Harm The Public Interest.**

Finally, a temporary stay of the proceedings will not harm the public interest.  The public does not have an interest in pressing ahead in this litigation without "'involving as many apparently concerned persons as is compatible with efficiency and due process.'" <u>Coal. of Ctys.</u>, 100 F.3d at 841 (quoting <u>Neusse v. Camp</u>, 385 F.2d 694, 700 (D.C. Cir. 1967)) (describing

---

[4] Based on the most recent Federal Court Management Statistics (September 2016), the median time elapsed from filing a notice of appeal to disposition in the Tenth Circuit is 6.7 months.  <u>See</u> Judicial Caseload Profile, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile0930.2016_2.pdf at 26 (last visited Jan. 19, 2017).  If the Tenth Circuit resolves the intervention appeal in that time, a stay is unlikely to delay proceedings in this court by more than 2-3 months.

purpose of Rule 24). Moreover, a stay will further the public interest by conserving judicial time and resources. To avoid potential duplication and waste, the Court should stay proceedings on Claims 2 and 3 pending resolution of the Conservation Groups' appeal.

## CONCLUSION

For the foregoing reasons, the Conservation Groups respectfully request that the Court stay proceedings on Claims 2 and 3, except for the filing of the administrative record, until the Tenth Circuit resolves their appeal of this Court's order denying the motion to intervene.

Respectfully submitted this 20th day of January 2017,

/s/ Michael S. Freeman
Michael S. Freeman
Robin Cooley
Yuting Chi
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
Phone: (303) 623-9466
Facsimile: (303) 623-8083
mfreeman@earthjustice.org
rcooley@earthjustice.org
ychi@earthjustice.org

Kyle J. Tisdel
Western Environmental Law Center
208 Paseo del Pueblo Sur, Suite 602
Taos, NM 87571
Phone: (575) 613-8050
tisdel@westernlaw.org

*Attorneys for Applicants for Intervention*

14

Samantha Ruscavage-Barz
WildEarth Guardians
516 Alto St.
Santa Fe, NM 87501
Phone: (505) 401-4180
sruscavagebarz@wildearthguardians.org

*Attorney for Applicant-Intervenor*
*WildEarth Guardians*

Michael Saul
Center for Biological Diversity
1536 Wynkoop Street, Suite 421
Denver, CO 80202
Phone: (303) 915-8308
Msaul@biologicaldiversity.org

*Attorney for Applicant-Intervenor Center for*
*Biological Diversity*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 20th day of January 2017, I filed the foregoing

**MOTION TO STAY PROCEEDINGS PENDING APPEAL OF ORDER DENYING**

**MOTION TO INTERVENE** using the United States District Court CM/ECF which caused all

counsel of record to be served by electronically.

/s/ Michael S. Freeman
Michael S. Freeman
*Attorney for Applicants for Intervention*